NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No.05-42920 |
| Barry J. Costanzo and Jamie E. Costanzo | : | Chapter 7 |
| Debtors. | : | |
| American General Financial Services | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 05-6094 |
| Barry J. Costanzo | : | |
| Defendant | : | **MEMORANDUM OPINION** |
| | : | **HEARING DATE: 8/3/06** |

**APPEARANCES**

FOR PLAINTIFF, AMERICAN GENERAL FINANCIAL SERVICES
Randolph Walzer, Esquire
Schiff & Shiff
P.O. Box 1000
West Long Branch, NJ 07764

FOR DEFENDANT, BARRY J. COSTANZO
Barry W. Frost, Esquire
Teich Groh
691 State Highway 33
Trenton, NJ 08619

The Honorable Kathryn C. Ferguson, USBJ

## Introduction

American General Financial, hereinafter "AGF," initiated this adversary complaint on November 9, 2005.  AGF seeks a determination of nondischargeability of a ten thousand dollar loan to the debtor pursuant to 11 U.S.C. § 523(a)(2)(A) and (B).  This court conducted a trial on August 3, 2006.  The following is the opinion of the court.

## Facts

The defendant, Barry Costanzo, was the sole proprietor of a used auto dealership known as Quality Auto Sales, [ "QAS,"] for five years.  QAS had operations in both Lakehurst and Toms River.  QAS closed the Toms River location in early 2005 and on June 1, 2005, re-opened its second location in Bricktown.  As late as June 2005, QAS was operating at a profit.

In early 2005, QAS inadvertently credited a forty-two thousand dollar deposit twice.  As a result, QAD overdrew the account by forty-one thousand dollars, largely on checks to its floor plan financer. In addition, QAS also owed approximately twenty-nine thousand dollars on its floor plan line at that time.  QAS made good the forty-one thousand in overdrawn checks and entered into a workout agreement with its floor plan financer to pay off the remaining twenty-nine thousand.  The agreement called for QAS to make payments of two thousand dollars a week for fifteen weeks, and continued access to the floor plan line of credit.  QAS began making payments under this agreement on May 5, 2005 but realized by the end of May that the floor plan line had been terminated notwithstanding those payments.  Mr. Costanzo originally believed that the inventory he had in stock would be sufficient to enable QAS to complete payments under the work out agreement as long as he was able to to borrow money from "subprime sources" in order to meet fixed expenses.

On May 27, 2005, Mr. Costanzo borrowed ten thousand dollars from Household Finance, ["HFC."] On June 8, 2005, Mr. Costanzo borrowed approximately ten thousand dollars from CitiFinancial Services, Inc. On that same date, Mr. Costanzo contacted AGF via telephone after seeing its advertisement in the phonebook. Mr. Costanzo told Joe[1] at AGF that he needed fifty thousand dollars to cover his business expenses. Joe indicated that AGF would typically lend only five thousand dollars but he would attempt to obtain a loan in a greater amount for Mr. Costanzo. Joe took Mr. Costanzo's loan application for twenty thousand dollars over the phone.

AGF's company policy is to run a credit report and verify the credit report information with the proposed borrower. AGF then makes a determination whether to lend money and in what amount based on the information in the loan application, the credit report and any additional information provided by the borrower. The credit report that AGF obtained for Mr. Costanzo did not reflect the recent loans from HFC and CitiFinancial Services, although it did show that HFC had made an inquiry about Mr. Costanzo on May 26, 2005. Mr. Costanzo does not specifically disclosing the unreported loans, but claims he was not asked and that he made Joe aware at the time of the loan application that he needed fifty thousand dollars and was borrowing money from other lenders. On June 13, 2005, AGF extended a ten thousand dollar loan to Mr. Costanzo. Mr. Costanzo went to AGF's location to sign the agreement. He was there less than five minutes and by his own admission, did not read the loan application before he signed it.

Mr. Costanzo's floor plan financer refused to reinstate the floor plan line, even after he repaid his obligation in full. Without access to the floor plan line, he was unable replace his inventory. QAS business plummeted rapidly and Mr. Costanzo was unable to make a single

---

[1]Mr. Costanzo could not remember Joe's last name, and AGF's witness, Mr. Cordoba did not know who took Mr. Costanzo's loan application.

payment on account of his indebtedness to AGF. On September 30, 2005, Mr. Costanzo filed a petition for relief under Chapter 7 of the Bankruptcy Code. AGF initiated this cause of action on November 9, 2005, seeking a determination that the ten thousand dollar loan is nondischargeable under § 523(a)(2)(A) or § 523(a)(2)(B).

**Discussion**

**A. Burden of Proof**

The standard of proof under both § 523(a)(2)(A) and § 523(a)(2)(B) is the preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 288-89 (1991). Therefore, in order for any debt to AGF to be declared nondischargeable, the plaintiff must establish all of the elements of either § 523(a)(2)(A), § 523(a)(2)(B). Starr v. Reynolds, 193 B.R. 195 (D.N.J. 1996).

**B. §523(a)(2)(A): False Representation**

Section 523(a)(2)(A) of the Bankruptcy Code provides that: "[a] discharge. . .does not discharge an individual debtor from any debt. . . to the extent obtained by false pretenses, a false representation, or actual fraud. . . ." 11 U.S.C. §523(a)(2)(A). In order for AGF to prevail under this section, it must establish that Mr. Costanzo: "(1) made a false or misleading statement; (2) with the intent to deceive; and (3) in order for the plaintiffs to turn over money or property to the defendants." In re Hambley, 329 B.R. 382, 396-97 (Bankr. E.D.N.Y. 2005).

First, AGF contends that Mr. Costanzo failed to disclose his business problems and the other loans he had obtained within a month of applying for this loan. It argues that such omissions constitute a "false or misleading statement." While omissions can satisfy the "false statement" element, Mr. Costanzo testified that he was never asked why he needed a loan or whether he was having business problems. AGF presented no testimony to rebut Mr. Costanzo's assertions. AGF

also failed to rebut Mr. Costanzo testimony that he informed Joe that he had or was in the process of obtaining loans from other lenders. While Mr. Costanzo may not have uttered the phrase "my business is having financial problems," it is hard to classify that as a material omission given the totality of the circumstances. Therefore, AGF has not met its burden of establishing that Mr. Costanzo made a false or misleading statement.

Even if AGF had proven that Mr. Costanzo made a "false or misleading statement," it still failed to establish the second element of false representation: "intent to deceive." AGF asks the court to draw the inference that because Mr. Costanzo never made a payment to AGF and filed for bankruptcy within months of receiving this loan, he never intended to repay AGF. The court is unable to do so. "Proof of intent to deceive is measured by the debtor's subjective intention at the time the representation was made." In re Curtis, 2006 WL 1506209 at *8 (Bankr. C.D. Ill. May 24, 2006). "[A]ny subsequent conduct that is contrary to the original representation does not necessarily indicate that the original representation was false." In re Bowden, 326 B.R. 62, 87 (Bankr. E.D. Va. 2005). Therefore, the facts that Mr. Costanzo never made a payment and filed shortly thereafter the loan are some evidence of subjective intent, but are not dispositve. Mr. Costanzo credibly testified that he intended to repay the loan at the time that he signed the loan agreement. Mr. Costanzo testified that after he had obtained the loan, he worked long hours, sometimes until three o'clock in the morning, setting up his business in the new location. This unrebutted testimony indicates that even after the loan Mr. Costanzo believed his business would continue and he would continue to pay his debts.

Because AGF failed to establish the first two elements of false representation where it is

required to prove each, the claim under § 523(a)(2)(A) must fail altogether.

**C. § 523(a)(2)(B): False Statement in Writing**

AGF alternatively argues that the debt should be held nondischargeable pursuant to § 523(a)(2)(B). That section provides that: "[a] discharge. . .does not discharge an individual debtor from any debt. . . to the extent obtained by use of a statement in writing (I) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable. . . reasonably relied." 11 U.S.C. §523(a)(2)(B).  In order for this court to find that the debt is nondischargeable pursuant to this section,  AGF must have shown that: "(1) the debtor made a statement in writing; (2) the statement concerned the debtor's financial condition; (3) the statement was materially false; (4) the debtor made the representation with and intent to deceive the creditor; and (5) the creditor actually and reasonably relied on the misrepresentation." In re Cohen, 334 B.R. 392, 398 (Bankr. N.D. Ill. 2005)(citing In re Morris, 223 F.3d 548, 552 (7th Cir. 2000)).

AGF satisfied its burden that "the debtor made a statement in writing" and that "the statement concerned the debtor's financial condition" by presenting a loan application signed by Mr. Costanzo, clearly a statement in writing. Because the document was an accounting of all of Mr. Costanzo's earnings and creditors, even the narrowest interpretation of "concerning the debtor's financial condition," means the document was satisfies these elements of AGF's cause.[2]

---

[2] There are three interpretations of the phrase "concerning the debtor's financial condition." See In re Joelson, 427 F.3d 700, 704 (10th Cir. 2005).  These interpretations include the "broad interpretation" or "expansive view," the "strict interpretation" or "limited reading," and the "modified 'expansive' view."  See id. (holding that under the "broad interpretation" or "expansive view," a communication addressing the status of a single asset or liability satisfies this element and that under the "strict interpretation" or "limited view" this elements is satisfied by communications that give a sense of the debtors overall financial condition); In re Booher, 284 B.R. 191, 212 (Bankr. W.D. Pa. 2002)(holding that the "modified 'expansive' view" examines the weight that a lender may put in such a document in determining whether to lend and the intention of such a document).  The loan application in this case would satisfy even the strict interpretation of this element.  Therefore, this element is satisfied.

This writing was also a false statement. It is undisputed that at the time that Mr. Costanzo obtained the loan from AGF, he had loans that were not listed on the loan application. Whether this is materially false, i.e. whether AGF would have denied the loan or limited the amount hd these loans been included requires a more difficult leap. "Under new Jersey law, a fact is material if 'a reasonable [person] would attach importance to its existence or nonexistence in determining his [or her] choice of action in the transaction in question'. . . ." Violas v. General Motors Corp. 170 F.3d 367, 376 (3d Cir. 1999)(quoting Strawn v. Canuso, 140 N.J. 43 (1995)). The writing here was not materially false because AGF was aware or should have been aware of the other loans yet loaned Mr. Costanzo ten thousand dollars. First, Mr. Costanzo told Joe that he was obtaining loans from other lenders. Again, AGF could have produced Joe as a witness to refute this testimony, but did not. Second, the credit report that AGF obtained reflected that another creditor had recently made an inquiry. This evidence suggests an awareness and possibly even a consideration of at least the HFC loan at the time the AGF loan was extended to Mr. Costanzo. Therefore, any lack of this additional information on the loan application itself was not material. Moreover, Mr. Cordoba, AGF's witness, testified that AGF's internal lending procedures include review of factors outside the loan application, such as the credit report and follow up questions regarding any issues raised therein. AGF would have discovered the at least the HFC loan if it had followed its own procedures. Anything omissions on the loan application that AGF could have uncovered if it followed its own procedure cannot be deemed material. Thus, the loan application is not materially false.

Even if this court were to hold that the omissions on the loan application rendered the document materially false, AGF did not establish the requisite intention. "Intent to deceive may be

7

inferred from the totality of the circumstances, including a reckless disregard for the truth." In re Cribbs, 327 B.R. 668, 673 (10th Cir. B.A.P. 2005). "A finding of reckless disregard should be very narrowly interpreted because a misrepresentation is fraudulent only if the maker 'knows or believes the matter is not what he represents it to be.'" Id. (quoting Chevy Chase Bank FSB v. Kukuk (In re Kukuk), 225 B.R. 778, 787 (10th Cir. B.A.P. 1998). AGF argues that the fact that Mr. Costanzo did not read the loan agreement before he signed it is evidence of a reckless disregard for the truth. However, this court is not persuaded that Mr. Costanzo was aware that the loan application required disclosure of the specific HFC and CitiFinancial loans. He had told AGF that he was seeking other loans. He had told AGF that he needed a total of fifty thousand dollars. He was not asked about anything in his credit report. Mr. Costanzo's failure to read a loan application that he saw for the first time in the context of a five minute closing does not satisfy the narrow interpretation of reckless disregard required by this section. Therefore, he did not have the requisite intent at the time he obtained the loan to warrant denial of a discharge under §523(a)(2)(B).

Finally, AGF failed to establish the final element of § 523(a)(2)(B), reasonable reliance. In order to "establish reasonable reliance upon a false statement of financial condition, a creditor must prove that reliance was objectively reasonable and there was actual reliance." In re Bowden, 326 B.R. 62, 93 (Bankr. E.D. Va. 2005). The court in In re Chamberlain described certain factors that a fact finder should consider when determining reasonable reliance:

> "(a) the existence of prior contacts and transactions that allow for the development of a relationship of trust;
>
> (b) the existence of any "red flags" that would alert an ordinary prudent person that the representations were inaccurate; and

(c) whether a minimal investigation would have exposed the inaccuracies."

In re Chamberlain 330 B.R. 195 (Bankr. S.D. Ohio 2005). Here, AGF had no prior relationship with Mr. Costanzo. Mr. Costanzo selected AGF from the phonebook and applied for his loan via telephone. Second, according to the testimony of AGF's Mr. Cordoba, there were "red flags" in Mr. Costanzo's loan application. For example, Mr. Costanzo listed both his gross and net income as ten thousand dollars. Third, Mr. Costanzo's credit report indicated an inquiry by another creditor after Mr. Costanzo said that he was seeking other financing. Minimal investigation of this entry would have informed AGF of the HFC loan, thereby exposing the claimed inaccuracies. Thus, all three factors suggest that AFC did not reasonably rely on the information in Mr. Costanzo's loan application.

AGF failed to establish three of the required five elements of §523(a)(2)(B); Therefore, this claim must fail entirely as well.

## Conclusion

Since AGF has not met its burden to establish the requisite elements of either §523(a)(2)(A) and §523(a)(2)(B), the court will enter a judgment declaring Mr. Costanzo's debt to AGF to be discharged . Counsel for Mr. Costanzo will submit a form of judgment consistent with this opinion.

_____
KATHRYN C. FERGUSON, USBJ
US Bankruptcy Court

Dated: August 23, 2006